IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER BAILEY,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ] |
| v. | ] |
| | ] Case No.: 1:12-cv-4206-KOB |
| **NATIONAL UNION FIRE** | ] |
| **INSURANCE CO. OF PITTSBURGH,** | ] |
| **PA.,** | ] |
| | ] |
| **Defendant.** | ] |

### MEMORANDUM OPINION

Plaintiff Christopher Bailey, a truck-driver, suffered a back injury as a result of an automobile accident on July 6, 2009, leaving him unable to continue driving semi-trucks. Prior to the accident, Mr. Bailey had purchased an insurance policy with Defendant National Union Fire Insurance Company of Pittsburgh, Pennsylvania. Because the accident left Mr. Bailey unable to continue driving semi-trucks, National Union began paying Mr. Bailey Temporary Total Disability Benefits under the Policy and continued to do so for the maximum time period provided for under the Policy—104 weeks. On July 4, 2011, the 104-week period ended, and Mr. Bailey became eligible to receive Continuous Total Disability Benefits. National Union, however, determined that Mr. Bailey did not qualify for Continuous Total Disability Benefits and sent him a letter explaining its denial of his claim. Mr. Bailey subsequently brought suit against National Union for breach of contract and bad faith.[1]

This matter is now before the court on the parties' cross motions for summary judgment

---

[1] Mr. Bailey's claims arise solely under state law, and he does not assert a claim under ERISA.

1

(docs. 38 & 40) and National Union's "Motion to Strike Portions of the Declaration of Christopher Bailey" (doc. 45).  For the reasons discussed below, the court will DENY both parties' motions for summary judgment as to the breach of contract claim.  The court will GRANT National Union's motion for summary judgment as to the bad faith claim and DENY Mr. Bailey's motion for summary judgment on the bad faith claim.  Finally, because Mr. Bailey's declaration does not alter the outcome of the parties' motions for summary judgment, this court will DENY National Union's motion to strike the declaration as MOOT.

## I.  STANDARD OF REVIEW

Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  Once the moving party meets this burden, the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find in its favor. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). In doing so, all evidence and reasonable inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

The applicable Rule 56 standard is not affected by the filing of cross motions for summary judgment. *See, e.g., Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001). When parties file cross motions for summary judgment, "each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *Busby v. JRHBW Realty, Inc.*, 642 F. Supp. 2d 1283, 1288 (N.D. Ala. 2009). "The fact that both parties simultaneously are arguing that there is no genuine issue of fact . . . does not establish that a trial is unnecessary thereby empowering the court to enter judgment as it sees fit." *Id.* (internal quotation marks omitted). Nonetheless, "cross-motions may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *United States v. Oakley*, 744 F.2d 1553,1555–56 (11th Cir. 1984).

## II.  STATEMENT OF FACTS

In June of 2007, Central Hauling, Inc. hired Mr. Bailey to work as an interstate truck driver.  Mr. Bailey began leasing a truck from Central Hauling and, as part of the leasing package, purchased an accidental occupational insurance policy from National Union.  Among other coverages, the Policy provided for both Temporary Total Disability coverage and Continuous Total Disability coverage.

**Temporary Total Disability**

Under the Policy, Mr. Bailey was entitled to 104 weeks of Temporary Total Disability benefits if he suffered an injury resulting in a Temporary Total Disability.  The Policy provides the following definition for a Temporary Total Disability: "Temporarily Totally Disabled means disability that: (1) prevents an Insured Person from performing the duties of his or her regular, primary occupation; and (2) requires that, and results in, the Insured Person receiving Continuous Care."  (Doc. 41-1, at 91).

**Continuous Total Disability Benefits**

The Policy also provides for Continuous Total Disability Benefits following the 104 week Temporary Total Disability Benefit period so long as the insured qualifies.  The following provision governs whether an insured person qualifies for Continuous Total Disability Benefits:

> **Continuous Total Disability Benefit**
> If Injury to the Insured Person, resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, the Company will pay the Continuous Total Disability Benefit . . ., provided:
>
>> 1. benefits payable for a Temporary Total Disability Covered Loss ceased solely because the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, but the Insured Person remains disabled;

>2. the Insured Person is under the age 65 at the day after the Maximum
>Benefit Period shown in the Schedule for Temporary Total Disability has
>been reached;
>3. the Insured Person has been granted a Social Security Disability Award
>for their disability; and
>4. their disability is reasonably expected to continue without interruption
>until the Insured Person Dies.

(Doc. 41-1, at 91). The Policy further defines both "Injury" and "Continuous Total Disability."

The Policy defines Injury in relevant part as a "bodily injury to an Insured Person caused by an Occupational accident . . ., which results directly from and independently of all other causes in a Covered Loss." (Doc. 41-1, at 85). Additionally, the Policy provides the following definition for Continuous Total Disability:

>**Continuous Total Disability, Continuously Totally Disabled** means disability that: (1) prevents an Insured Person from performing the duties of any occupation for which he or she is qualified by reason of education, training or experience; and (2) requires that, and results in, the Insured Person receiving Continuous Care.

(Doc. 41-1, at 92).

**Mr. Bailey's Accident and Subsequent Treatment**

On July 6, 2009, Mr. Bailey was driving his tractor trailer down the interstate in Tennessee when a car pulled out in front of him. Unable to avoid the collision, Mr. Bailey crashed into the car before striking a guard rail and coming to stop. Following the accident, National Union began paying Mr. Bailey Temporary Total Disability Benefits. National Union had the right under the Policy to require Mr. Bailey to submit to a physical examination and referred Mr. Bailey to Dr. Jeffery Todd Smith, an orthopedic spine surgeon.

Dr. Smith diagnosed Mr. Bailey with a herniated disk and spondyloslisthesis, which is essentially a stress fracture in the back of the spine. Dr. Smith found that Mr. Bailey's herniated

disk could have been caused by the accident and that his spondyloslisthesis, although not caused by the accident, could have been aggravated by the accident. Although concluding that Mr. Bailey was injured, Dr. Smith believed that Mr. Bailey was magnifying the severity of his injury. Nonetheless, Dr. Smith concluded that Mr. Bailey's injuries were sufficiently severe to prevent him from returning to work as a semi-truck driver. Because the Policy entitled Mr. Bailey to Temporary Total Disability so long as he was unable to "perform[] the duties of his . . . regular, primary occupation"—i.e. driving semi-trucks—National Union continued to pay Temporary Total Disability benefits to Mr. Bailey.

In the weeks and months following the accident, Mr. Bailey continued to frequent doctors' offices. A week after the accident, Mr. Bailey saw Dr. Wyndol Hamer who referred Mr. Bailey to Dr. Thomas Wilson, a neurosurgeon. Dr. Wilson reached the same diagnosis as Dr. Smith—that Mr. Bailey suffered from a herniated disk, which may have been caused by the accident, and spondyloslisthesis, which may have been aggravated by the accident. Dr. Wilson saw Mr. Bailey on three occasions between the accident and December 30, 2009. During the time that he was seeing Mr. Bailey, Dr. Wilson concluded that Mr. Bailey was unable to work. *See* Doc. 41-5, at 12. However, in a later deposition, Dr. Wilson stated that he had no opinion as to whether Mr. Bailey continued to be disabled.

Mr. Bailey also sought medical treatment from his family physician, Dr. Mohammad Ismail, an internal medicine specialist. Dr. Ismail, after examining Mr. Bailey, initially concluded that Mr. Bailey was completely disabled from performing any manner of work and, on December 21, 2009, wrote a note to this effect for Mr. Bailey to send to National Union. Dr. Ismail, however, subsequently retreated from this position when he was deposed for this case,

stating "I think he could do office work, light work.  He's not completely disabled." (Doc. 41-6, at 27).

**Mr. Bailey's Supplemental Security Income Award**

On May 6, 2011, National Union sent Mr. Bailey a letter informing him that his 104 weeks of Temporary Total Disability benefits would expire on July 4, 2011.  The letter also informed Mr. Bailey that he would need to provide proof of a Social Security Disability Award to qualify for Continuous Total Disability Benefits.  Mr. Bailey subsequently received a fully favorable Supplemental Security Income Award, which National Union received a copy of on July 1, 2011.  In the Supplemental Security Income Award, the administrative law judge ("ALJ") stated that Mr. Bailey suffered from "obesity; and multi-level cervical and lumbar disc disease," which rendered Mr. Bailey completely disabled.

In reaching that conclusion, the ALJ cited the opinions of Dr. Ismail as well as two other physicians who examined Mr. Bailey—Dr. Sathyan Iyer and Dr. Hisham Hakim.  According to the Supplemental Security Income Award, Dr. Iyer had concluded that Mr. Bailey was significantly impaired and could not sit, stand or walk for extended periods of time.  Dr. Hakim also determined that Mr. Bailey was extremely physically limited, stating that Mr. Bailey "can sit for no more than 1 hour at a time and for no more than 3 hours in an 8 hour work day; he can stand and/or walk for no more than 30 minutes at a time and for no more than 1 hour total in an 8-hour work day; he requires a cane to ambulate and, with the cane, can ambulate one block . . . and [can] use his free hand to carry small objects no more than occasionally. . . ." (Doc. 39-7, at 11).  Based on the physicians' opinions, the ALJ determined that Mr Bailey's physical impairments prevented him "from doing sustained work related activities (at any exertional level)

in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week or an equivalent work schedule." (Doc. 39-7, at 12).

**National Union Denies Mr. Bailey Continuous Total Disability Benefits**

As National Union had forewarned, Mr. Bailey's Temporary Total Disability benefits ended on July 4, 2011. On July 5, 2011, however, National Union did not begin paying Mr. Bailey Continuous Total Disability Benefits. Instead, National Union sent Mr. Bailey a letter on October 31, 2011, asking him to sign and return a release allowing National Union to review his medical records. As requested, Mr. Bailey signed and returned the waiver. Upon receiving the release, National Union called Mr. Bailey's physicians to gather his medical records and subsequently referred Mr. Bailey to Dr. Kenneth Jaffe, an orthopedic surgeon, for another review of Mr. Bailey's medical condition.

Dr. Jaffe examined Mr. Bailey and reported his findings to National Union. In his report, Dr. Jaffe reached the same conclusions as Dr. Smith, finding that Mr. Bailey suffered from spondyloslisthesis and a herniated disk, and that Mr. Bailey appeared to be magnifying the severity of his injuries. Upon receiving the report, National Union submitted Mr. Bailey's medical records to Dr. Kenneth Kopacz, an orthopedic surgeon, for peer review. After reviewing the records, Dr. Kopacz agreed that Mr. Bailey suffered from a herniated disk and spondyloslisthesis. However, Dr. Kopacz concluded that, even with his injuries, Mr. Bailey could perform light work. Dr. Kopacz sent his findings to National Union.

Upon receiving Dr. Kopacz's report, National Union retained Connie Chapin, a vocational case manager, to conduct a vocational assessment of Mr. Bailey. Ms. Chapin reviewed Mr. Bailey's records and interviewed Mr. Bailey over the telephone. Based on her

review of Mr. Bailey's case, Ms. Chapin concluded that Mr. Bailey was not completely disabled and could perform numerous jobs involving light work.

Based on Dr. Kopacz's and Ms. Chapin's findings, National Union determined that Mr. Bailey did not qualify for Continuous Total Disability Benefits and, on March 23, 2012, sent Mr. Bailey a letter informing him of its conclusion.  The letter explained that Mr. Bailey did not qualify for Continuous Total Disability Benefits for two reasons.  First, the letter stated that Mr. Bailey had not received a favorable Social Security Disability Award "as a result of his work related injury."[2]  Second, the letter explained that the Policy required Mr. Bailey to be disabled from "performing the duties of *any* occupation for which he . . . is qualified" and that he failed to satisfy this requirement because numerous health experts had determined that he could perform light sedentary work.

After receiving the letter, Mr. Bailey brought suit against National Union, asserting claims for breach of contract and bad faith.

### III.  DISCUSSION

**Breach of Contract**

To state a claim for breach of contract under Alabama law, a plaintiff must prove: "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Emp.'s Benefit Ass'n v. Gissett*,

---

[2] In a subsequent deposition, Mr. Bailey asked Ms. Regan what she meant by this statement.  Ms. Regan explained that although Mr. Bailey received a favorable Supplemental Security Income Award, which would ordinarily satisfy the requirement that Mr. Bailey be awarded a favorable Social Security Disability Award, she did not believe the Supplemental Security Income Award met the Policy requirements in Mr. Bailey's case because the award was based in part on obesity.  As such, she concluded that Mr. Bailey did not receive a favorable award *as a result* of his work related injury, which she interpreted the Policy as requiring.

732 So. 2d 968, 975 (Ala. 1998) (internal quotation omitted).  In the present case, the parties had a valid contract, and Mr. Bailey paid his premiums under the policy.  The parties, however, dispute whether Mr. Bailey met the eligibility requirements for Continuous Total Disability Benefits and, thus, whether National Union had a duty to pay those benefits to Mr. Bailey.

National Union asserts two arguments in support of it motion for summary judgment.  First, National Union argues that Mr. Bailey does not satisfy the Policy provision requiring that he be "Continuously Totally Disabled."  Second, National Union argues that Mr. Bailey does not satisfy the Policy provision requiring that his injury "results directly from and independently of all other causes in a Covered Loss."  (*See* Doc. 41-1, at 85).  This court will address each argument in turn.

*Continuously Totally Disabled*

To qualify under the Policy, Mr. Bailey must be "Continuously Totally Disabled."  The Policy defines Continuous Total Disability as a disability that "prevents an Insured Person from performing the duties of *any* occupation for which he or she is qualified . . . ."  (Doc. 41-1, at 92) (emphasis added).  National Union contends that Mr. Bailey cannot show that he is unable to perform the duties of any occupation because both Dr. Kopacz and Ms. Chapin determined that he could perform light work and "[n]o treating physicians or independent medical examiner . . . offered the opinion that [Mr. Bailey's] back injury prevents him from performing the duties of any occupation."  (Doc. 40, at 15).  Although National Union is correct that no physician has ever specifically stated that Mr. Bailey is unable to perform the duties of any occupation, Mr. Bailey' Supplemental Security Income Award creates a genuine issue of material fact as to whether Mr. Bailey can perform the duties of any occupation.

In that award, the ALJ concluded that Mr. Bailey's injuries were so severe that Mr. Bailey was unable to perform full-time work *at any level of exertion*. (Doc. 39-7, at 12). The ALJ's conclusions are supported by the opinions of Dr. Iyer and Dr. Hakim.[3] Dr. Hakim determined that Mr. Bailey's back injury was so severe that Mr. Bailey could sit for no more than one hour at a time and for no more than three hours in day. Dr. Hakim also found that Mr. Bailey could stand for no more than thirty minutes at a time and for no more than one hour total in an eight-hour work day. Likewise, Dr. Iyer concluded that Mr. Bailey "had significant impairment of functions involving sitting, standing for long periods, walking, climbing, working around heights, working around machinery, driving, lifting, bending, and carrying." (Doc. 39-7, at 11).

Looking at Dr. Hakim's and Dr. Iyer's assessments of Mr. Bailey's condition along with the ALJ's determination that Mr. Bailey was completely disabled from performing work at any level of exertion, a reasonable fact finder could conclude that Mr. Bailey is completely disabled from performing the duties of any occupation. Therefore, a material question of fact exists as to whether Mr. Bailey's condition meets the definition of Continuously Totally Disabled and, thus,

---

[3] In its brief, National Union asserts that this court should not consider Dr. Iyer's and Dr. Hakim's statements within the Supplemental Security Income Award because the statements constitute hearsay. However, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012). Here, Mr. Bailey could reduce Dr. Iyer's and Dr. Hakim's testimony to admissible form by calling them to testify at trial. *See Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996). Therefore, this court will consider Dr. Iyer's and Dr. Hakim's opinions for the purpose of the parties' summary judgment motions.

whether Mr. Bailey qualifies for Continuous Total Disability Benefits. As such, National Union is not entitled to summary judgment on Mr. Bailey's breach of contract claim.

Additionally, because a material question of fact exists as to whether Mr. Bailey is entitled to Continuous Total Disability Benefits and, thus, whether National Union violated the Policy by failing to pay Mr. Bailey those benefits, Mr. Bailey is not entitled to summary judgment on his breach of contract claim. Therefore, his motion for summary judgment is also due to be denied.

*Direct and independent*

Nation Union next argues that the Policy requires Mr. Bailey to show that his Continuous Total Disability resulted "directly and independently" from his back injury and that he cannot make this showing because the ALJ considered Mr. Bailey's obesity as well as his back injury in determining that Mr. Bailey was disabled. National Union's argument is without merit because it is based on a misreading of the Policy; the Policy does not require Mr. Bailey to show that his back injury was the direct and independent cause of his Continuous Total Disability.

In reading the Policy to require Mr. Bailey to show that his Continuous Total Disability resulted "directly and independently" from his back injury, National Union conflates two separate inquiries—whether Mr. Bailey's accident caused his Injury and whether his Injury caused his Continuous Total Disability.

Under the Continuous Total Disability Benefits provision, an insured person is entitled to Continuous Total Disability Benefits only "[i]f Injury to the Insured Person . . . results in Continuous Total Disability. . . ." *See* Doc. 41-1, at 91.  To demonstrate that he satisfies this provision, an insured person must make two different showings.  First, he must show that he suffered an Injury, as defined under the Policy.  Second, he must show that his Injury resulted in Continuous Total Disability.

As to the first requirement, the Policy defines "Injury" as a "bodily injury to an Insured Person caused by an Occupational Accident . . ., which results directly from and independently of all other causes in a Covered Loss."  (Doc. 41-1, at 85).  Thus, the definition of Injury narrowly limits coverage to only bodily injuries caused *directly and independently* by an Occupational Accident.  In the present case, evidence exists that Mr. Bailey's accident directly and independently caused him to suffer a bodily injury—a herniated disk.  Numerous physicians examined Mr. Bailey and concluded that his herniated disk could have been caused by Mr. Bailey's automobile accident.  As such, a genuine issue of material fact exists as to whether Mr. Bailey suffered a bodily injury that qualifies under the Policy's definition of "Injury."

Having determined that a genuine issue of fact exists as to the first requirement, this court looks to the second requirement—that Mr. Bailey's "Injury" resulted in his Continuous Total Disability.  In contrast to the strict causation requirement included in the definition of "Injury," the Continuous Total Disability Benefits provision contains no language limiting coverage to

only Continuous Total Disabilities that result "directly and independently" from an Injury. Instead, the provision simply provides for coverage so long as "Injury to the Insured Person . . . results in Continuous Total Disability."[4]

In the present case, evidence exists that Mr. Bailey's herniated back resulted in his becoming Continuously Totally Disabled. In Mr. Bailey's Social Security Award, the ALJ cites Mr. Bailey's back injury as a cause of his disability. The ALJ's determination that Mr. Bailey's back injury caused his disability satisfies the causal requirement of the Continuous Total Disability Benefits provision notwithstanding the fact that the ALJ also considered Mr. Bailey's obesity. Additionally, both Dr. Iyer and Dr. Hakim discuss Mr. Bailey's back injury exclusively as the cause of his physical limitations. This evidence is sufficient to create a genuine issue of material fact as to whether Mr. Bailey became Continuously Totally Disabled as a result of the

---

[4] The entire provision reads:

**Continuous Total Disability Benefit**
If Injury to the Insured Person, resulting in Temporary Total Disability, subsequently results in Continuous Total Disability, the Company will pay the Continuous Total Disability Benefit . . ., provided:
    1. benefits payable for a Temporary Total Disability Covered Loss ceased solely because the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached, but the Insured Person remains disabled;
    2. the Insured Person is under the age 65 at the day after the Maximum Benefit Period shown in the Schedule for Temporary Total Disability has been reached;
    3. the Insured Person has been granted a Social Security Disability Award for their disability; and
    4. their disability is reasonably expected to continue without interruption until the Insured Person Dies.

(Doc. 41-1, at 91).

injuries he suffered in the car accident.  Therefore, National Union is not entitled to summary judgment on Mr. Bailey's breach of contract claim on this ground either, and National Union's motion for summary judgment on that claim is due to be denied.

**Bad Faith**

Under Alabama law, bad faith is a "singular" tort with two different methods of proof—"normal" bad faith, also known as bad faith refusal to pay, and "abnormal" bad faith, known as bad faith refusal to investigate.  *See State Farm Fire & Cas. Ins. Co. v. Brechbill*, 144 So. 3d 248, 258 (Ala. 2014).  In his complaint, Mr. Bailey only asserted a claim of bad faith against National Union under the normal method of proof.  (Doc. 1-1, at 8).  However, in his motion for summary judgment, Mr. Bailey subsequently asserts that National Union engaged in both normal and abnormal bad faith.  (Doc. Doc. 38, at 27).  Although Mr. Bailey's complaint is deficient in this regard, this court will nevertheless address Mr. Bailey's bad faith claim under both methods of proof as National Union is entitled to summary judgment either way.

A party alleging a claim under "normal" bad faith has the burden of proving four elements: "(1) a breach of the insurance contract; (2) an intentional refusal to pay the insured's claim; (3) the absence of any legitimate or arguable reason for that refusal; and (4) the insurer's actual knowledge of any legitimate or arguable reason." *Mutual Serv. Cas. Ins. Co. v. Henderson*, 368 F.3d 1309, 1314 (11th Cir. 2004).  "Abnormal" bad faith adopts the elements of "normal" bad faith and adds a conditional fifth element: "(e) if the intentional failure to

determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim." *Brechbill*, 144 So. 3d at 258 (internal quotation omitted).

Although Alabama courts agree that the third element—the absence of any legitimate or arguable reason to refuse to pay a claim—is required to state a claim for "normal" bad faith, courts have debated whether the third element is also required for "abnormal" bad faith. The Alabama Supreme Court, however, recently settled that debate. *See Brechbill*, 144 So. 3d at 258.

In *Brechbill*, the Alabama Supreme Court stated that "[r]egardless of whether the claim is a bad-faith refusal to pay [normal bad faith] or a bad-faith refusal to investigate [abnormal bad faith], the tort of bad faith requires proof of the third element, absence of [a] legitimate reason for denial . . . ." *Id.* Thus, a plaintiff may not state a claim for either "normal" or "abnormal" bad faith if the defendant has a "legitimate or arguable" reason for refusing to pay a benefit under an insurance policy.

In the present case, National Union had a "legitimate or arguable" reason for refusing to pay Mr. Bailey Continuous Total Disability Benefits at the time it denied his claim because several health experts had concluded that Mr. Bailey was capable of performing sedentary work. Thus, Mr. Bailey arguably did not meet the definition of Continuously Totally Disabled as required under the Policy. Because National Union had an arguable basis for denying Continuous Total Disability Benefits to Mr. Bailey, Mr. Bailey cannot establish either a normal

or abnormal bad faith claim. Therefore, National Union is entitled to summary judgment on Mr. Bailey's bad faith claim.

## IV. CONCLUSION

For the reasons discussed above, the court will DENY both Mr. Bailey's and National Union's motion for summary judgment as to Mr. Bailey's breach of contract claim. The court will GRANT National Union's motion for summary judgment and will DENY Mr. Bailey's motion for summary judgment as to Mr. Bailey's bad faith claim. Additionally, the court deems National Union's motion to strike to be MOOT.

A separate Order to this effect will be filed simultaneously.

DONE and ORDERED this 24th day of April, 2015.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE